IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IOKEPA K. LEIALOHA, #A5017639, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, et al., <br><br> Defendants. | Civil No. 21-00411 JAO-RT <br><br> ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND AND DENYING MOTION FOR APPOINTMENT OF COUNSEL |

## <u>ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND AND DENYING MOTION FOR APPOINTMENT OF COUNSEL</u>

Before the Court is Plaintiff Iokepa K. Leialoha's ("Leialoha") prisoner civil rights complaint ("Complaint") brought pursuant to 42 U.S.C. § 1983, ECF No. 1, and his motion for appointment of counsel under 28 U.S.C. § 1915(e)(1), ECF No. 5.  In his Complaint, Leialoha alleges that Defendants,[1] including prison officials at

---

[1]  Leialoha names the State of Hawaii and the Department of Public Safety, and in their individual and official capacities, Acting Director Fred Hyun, Warden Kramer Mahoe, Adult Corrections Officer ("ACO") Auau, ACO Tabar, ACO Kyle Wise, Lieutenant Kahapea, ACO Sanchez, Sergeant Sam Kaeo, Sergeant Chong, ACO Alo, ACO Lee, and Sergeant Sugitan.  ECF No. 1 at 1–7.

the Hawaii Community Correctional Center ("HCCC"),[2] violated the Eighth

Amendment to the United States Constitution by threatening his safety, using

excessive force, and denying him medical care.  After screening the Complaint, the

Court concludes that Leialoha states a plausible threat-to-safety claim against

Sergeant Sugitan and ACO Lee, and he states a plausible excessive force claim

against ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe.  Leialoha's

remaining claims are DISMISSED with partial leave granted to amend.  Leialoha's

motion for appointment of counsel is DENIED without prejudice.

## I.  <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

---

[2]  Leialoha is currently incarcerated at the Halawa Correctional Facility.  *See*
VINE, https://www.vinelink.com/classic/#/home/site/50000 (select "Find an
Offender"; then enter "Leialoha" in "Last Name" field and "Iokepa" in "First
Name" field) (last visited Nov. 16, 2021).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>LEIALOHA'S CLAIMS</u>[3]

Leialoha alleges in Count I that he spent approximately two hours in the rain outside the HCCC's Waianuenue building on September 8, 2020.  ECF No. 1 at

---

[3]  Leialoha's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

10–11.  When Leialoha reentered Side A of the Waianuenue building ("Side A"),

he discovered that his clothes, towel, and blanket were gone.  *Id.* at 11.  Leialoha

asked Sergeant Chong for some dry, clean clothes because his uniform was

"soaking wet."  *Id.*  Sergeant Chong told Leialoha that he needed to wait.  *Id.*

Leialoha did not receive a dry uniform until approximately twelve hours later.  *Id.*

Leialoha alleges in Count II that soon after speaking with Sergeant Chong he

smelled something burning.  *Id.* at 12.  Leialoha saw sparks near Side A's fire exit

door, and he concluded that the door was being welded shut from the outside.  *Id.*

A fire then started within Side A.  *Id.*  According to Leialoha, Side A's fire exit

door would not open, and Side A's only other exit was barricaded with chairs and

tables.  *Id.*  Leialoha saw Sergeant Sugitan and ACO Lee inside the control station

"monitoring the situation/fire."  *Id.*  Side A's twenty-five inmates were trapped and

forced to huddle in a cubicle.  *Id.*  As Side A filled with smoke, someone began

breaking windows to circulate fresh air.  *Id.* at 13.  Leialoha estimated that he was

trapped in the cubicle for between one and two hours.  *Id.*  According to Leialoha,

"none of the H.C.C.C. staff made any attempt to help or evacuate" him and the

other inmates.  *Id.*

Leialoha alleges in Count III that prison officials fired pepper spray into

Side A and ordered the prisoners to leave.  *Id.* at 14.  The barricade blocking the

exit was removed, and prisoners began moving from Side A to Side B of the

Waianuenue building ("Side B"). *Id.* Prison officials secured the prisoners' hands behind their backs using zip ties. *Id.* As prison officials dragged these prisoners further into Side B, they were punched and kicked by ACO Wise, ACO Auau, ACO Alo, and Warden Mahoe. *Id.* 14–15. According to Leialoha, the prison officials also taunted and yelled at the prisoners. *Id.* at 15. Seeing all of this, Leialoha and other prisoners retreated to Side A. *Id.* A few minutes later, ACO Tabar entered Side A with a fire hose. *Id.* Instead of using the hose to extinguish the fire that was still burning in Side A, however, ACO Tabar turned the hose on Leialoha and the other inmates. *Id.* Water from the hose hit Leialoha's head, body, and legs. *Id.* As Leialoha made his way to Side B, he was ordered to lay down. *Id.* Leialoha complied and his hands were secured behind his back using zip ties. *Id.* While Leialoha was defenseless, ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe punched his face and body. *Id.* Some of them also kicked him. *Id.* One of the blows knocked out one tooth of Leialoha's. *Id.*

Leialoha alleges in Count IV that Sergeant Kaeo decided which prisoners received medical treatment as they reached Side B. *Id.* at 16. These prisoners included the elderly and those who had lost consciousness. *Id.* Leialoha told Sergeant Kaeo that he was having difficulty breathing, and he was experiencing sharp pains in his chest and blurred vision. *Id.* Leialoha's mouth was also

"bleeding profusely." *Id.*  According to Leialoha, Sergeant Kaeo denied him

medical care. *Id.*  Leialoha's symptoms continued for four or five days. *Id.*

Leialoha seeks $30,000 in punitive damages, $15,000 in compensatory

damages, and $5,000 in nominal damages. *Id.* at 17.

### III. <u>DISCUSSION</u>

**A.    Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a

right secured by the Constitution or laws of the United States was violated, and

(2) that the alleged violation was committed by a person acting under color of state

law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires a

connection or link between a defendant's actions and the plaintiff's alleged

deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v.

Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167

(9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional

right, within the meaning of section 1983, if he does an affirmative act, participates

in another's affirmative acts or omits to perform an act which he is legally required

to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*,

588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege

that he suffered a specific injury as a result of a particular defendant's conduct and

must affirmatively link that injury to the violation of his rights.

**B.     Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Leialoha names the State of Hawaii and the Department of Public Safety as Defendants.  ECF No. 1 at 1.  Any claims against these Defendants are barred by the Eleventh Amendment and therefore DISMISSED with prejudice.  *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)); *Blaisdell v. Haw. Dep't of Pub. Safety*, 621 F. App'x 414, 415 (9th Cir. 2015) (mem.) ("The district court properly dismissed [plaintiff's] action against the Hawaii Department of Public Safety because it is barred by the Eleventh Amendment." (citation omitted)).

Leialoha names each other Defendant in his or her individual and official capacities. *See* ECF No. 1 at 1–7. To the extent Leialoha seeks damages from state officials in their official capacities, these claims are also barred by the Eleventh Amendment and DISMISSED with prejudice. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." (citation omitted)). The Eleventh Amendment does not bar Leialoha's claims for damages against the individual Defendants in their personal capacities. *See id.* ("[The Eleventh Amendment] does not, however, bar claims for damages against state officials in their *personal* capacities." (citation omitted)).

## C.    Supervisory Liability

There is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A supervisory official may be held liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotation marks

and citation omitted).  "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citation omitted).

"Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted).  A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

Leialoha names Fred Hyun, the acting director of the Department of Public Safety ("DPS"), as a Defendant.  ECF No. 1 at 1.  Leialoha does not allege, however, that Hyun was personally involved in any constitutional violation.  Nor does he allege a causal connection between Hyun's conduct and a constitutional violation.  Indeed, Leialoha does not even mention Hyun in any of the Complaint's

9

four counts.  *See id.* at 10–16.  Leialoha cannot state a claim against Hyun solely because of his supervisory position at the DPS.  *See DePaepe v. White*, Civil No. 20-00198 JAO-WRP, 2020 WL 6531006, at *4 (D. Haw. Nov. 5, 2020) ("Because [Plaintiff] alleges no facts showing [the DPS Director's] personal involvement in his claims, he fails to state a colorable claim against [him].").  Any claims against Hyun are therefore DISMISSED with leave granted to amend.

**D.     Allegations on Behalf of Third Parties**

Pro se litigants have no authority to represent anyone other than themselves. *See Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("[W]e are bound by our general holding . . . that a non-lawyer has no authority to appear as an attorney for others than himself." (internal quotation marks and citation omitted)); *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear *in propria persona* in his own behalf, that privilege is personal to him.  He has no authority to appear as an attorney for others than himself." (citations omitted)).

At various points in the Complaint, Leialoha makes allegations based on the experiences of other prisoners at the HCCC.  For example, Leialoha alleges in Count I that Lieutenant Kahapea ordered another prisoner to be handcuffed and taken to "the hole."  ECF No. 1 at 10.  Leialoha further alleges in Count III that ACO Wise, ACO Auau, ACO Alo, and Warden Mahoe punched and kicked other

10

prisoners.  *Id.* at 14–15.  Leialoha may not assert claims on behalf of other prisoners.  *See Robinson v. Joya*, Civil No. 1:08-1339-JLS (BLM), 2010 WL 890437, at *13 (E.D. Cal. Mar. 8, 2010) ("Pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of other prisoners." (citation omitted)).  Any claims based on the experiences of other prisoners at the HCCC are therefore DISMISSED with prejudice.

## E.    Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (citations omitted).

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective."  *Norbert v. City & County of San Francisco*, 10 F.4th 918, 927

(9th Cir. 2021) (internal quotation marks and citation omitted).  Under the objective requirement, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted).  Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*; *see LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).  The subjective requirement, relating to the prison official's state of mind, requires "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted).  This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

### 1.   Clothing

Leialoha alleges in Count I that Sergeant Chong denied him a clean, dry uniform for approximately twelve hours.  ECF No. 1 at 11.

The denial of adequate clothing may, under certain circumstances, rise to the level of an Eighth Amendment violation.  *See Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). "The circumstances, nature, and duration of a deprivation of [clothing, however,] must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  For example, requiring inmates to remain outdoors in subfreezing temperatures for less than two hours can violate the Eighth Amendment, even where the inmates are provided with hip-length, lined denim coats and they can move freely.  *See id.*  Requiring an inmate to wear the same clothes for forty-five days also satisfies the objective element of an Eighth Amendment claim.  *See Seagrave v. Hennessey*, No. 92-17121, 1994 WL 68276, at *2 (9th Cir. Mar. 2, 1994).  "More modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing." *Johnson*, 217 F.3d at 731 (citation omitted).

According to Leialoha, he asked Sergeant Chong for "some dry clean clothes" because his uniform was "soaking wet" after spending two hours outside in the rain.[4]  ECF No. 1 at 11.  Leialoha, however, does not account for the

---

[4]  Although Leialoha alleges that ACO Sanchez was "present" when Leialoha discovered that his clothes, towel, and blanket were gone, ECF No. 1 at 11,

(continued . . .)

circumstances surrounding the alleged delay in providing him with a dry uniform. According to Leialoha, there was a significant disturbance in Side A soon after he spoke with Sergeant Chong.  That disturbance included a fire, a barricaded door, use of tear gas, and physical confrontations between prisoners and guards.  ECF No. 1 at 12–15.  Leialoha does not say when this disturbance was finally resolved or how long it took for him to receive a dry uniform once the disturbance was over. Without accounting for these circumstances, Leialoha has not plausibly alleged an extreme deprivation that would satisfy the objective element of an Eighth Amendment claim.  *See Adkins v. Shinn*, Civil No. 14-00156 LEK/KSC, 2014 WL 2738531, at *6 (D. Haw. June 16, 2014) ("Failure to provide Plaintiff a change of clothes every three days, and on one occasion requiring him to wear the same clothes for five days, while perhaps unhygienic, uncomfortable, and restrictive, does not constitute cruel and unusual punishment.").

Even if Leialoha could satisfy the objective requirement of an Eighth Amendment claim, he has not plausibly alleged that Sergeant Chong acted with deliberate indifference to his health or safety.  Leialoha alleges no facts suggesting that Sergeant Chong should have immediately provided with a new uniform.

---

(. . . continued)
Leialoha does not allege that he asked ACO Sanchez for a new uniform.  Leialoha therefore fails to state a plausible claim against ACO Sanchez.  Any claim against ACO Sanchez is DISMISSED with leave granted to amend.

Although Leialoha initially told Sergeant Chong that he "wasn't feeling well," ECF No. 1 at 11, this is not enough to show that Sergeant Chong knew of and disregarded an excessive risk to Leialoha's health or safety.  Moreover, Leialoha does not allege that Sergeant Chong was in any position to provide him with a new uniform after the disturbance began.

If Leialoha wants to pursue this claim, he must allege facts showing that he experienced an extreme deprivation despite the serious disturbance at the HCCC. He must also plausibly allege that Sergeant Chong acted with deliberate indifference to his health or safety.  Leialoha's claim based on his clothing is therefore DISMISSED with leave granted to amend.

### 2. Safety

Leialoha alleges in Count II that prison officials did not make "any attempt to help or evacuate" him after the fire started in Side A.  ECF No. 1 at 13.

Prison officials "must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted).  According to Leialoha, Side A quickly filled with smoke after the fire started.  ECF No. 1 at 12.  The smoke was so thick that Leialoha could barely see a hand held in front of his face.  *Id.* at 13.  Leialoha could not escape the fire and smoke because the fire exit door would not open, and the only other exit was barricaded by chairs and tables.  *Id.* at 12.  Leialoha estimated that he remained

trapped in Side A for between one and two hours.  *Id.* at 13.  According to

Leialoha, Sergeant Sugitan and ACO Lee were "monitoring the situation/fire from

the control station," but they made no "attempt to help or evacuate" him.[5]  *Id.* at

12–13.  Leialoha states a plausible claim against Sergeant Sugitan and ACO Lee

that may proceed.

### 3.    Excessive Force

Leialoha alleges in Count III that ACO Tabar used excessive force by

spraying him with water from a fire hose, and ACO Wise, ACO Alo, ACO Auau,

and Warden Mahoe used excessive force by punching and kicking him while he

was defenseless with his hands secured behind his back.  ECF No. 1 at 14–15.

"In its prohibition of 'cruel and unusual punishments,' the Eighth

Amendment places restraints on prison officials, who may not . . . use excessive

physical force against prisoners."  *Farmer*, 511 U.S. at 832 (citation omitted); *see*

*Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020).  "[W]henever prison

officials stand accused of using excessive physical force in violation of the Cruel

and Unusual Punishments Clause, the core judicial inquiry is . . . whether force

was applied in a good-faith effort to maintain or restore discipline, or maliciously

---

[5]  Although Leialoha alleges that Sergeant Chong and ACO Sanchez were in the control station at one point, he does not allege that they were still there when the fire began.  Nor does Leialoha allege Sergeant Chong and ACO Sanchez observed the conditions he and the other prisoners experienced in Side A after the fire started.

and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *see Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In determining whether the use of force was wanton and unnecessary, relevant considerations include "the extent of injury suffered by an inmate," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (citation omitted); *see Bearchild*, 947 F.3d at 1141. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9–10 (internal quotation marks and citation omitted). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (some internal quotation marks and citation omitted).

### a. ACO Tabar

When prison officials ordered the prisoners to leave Side A, Leialoha and other inmates retreated to Side A after seeing other prisoners being punched and kicked by officers as they were dragged into Side B. ECF No. 1 at 14–15. ACO

17

Tabar entered Side A a few minutes later and sprayed water at Leialoha from a fire hose. *Id.* at 15.

Leialoha fails to state a plausible excessive force claim based on ACO Tabar's use of the fire hose for several reasons. First, Leialoha does not allege that the water caused him any injury. *See Hudson*, 503 U.S. at 7 ("[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." (internal quotation marks and citation omitted)). Although Leialoha alleges that water hit him in the head, body, and legs, he does not identify any resulting injury. ECF No. 1 at 15.

Second, Leialoha does not describe the amount of force used. *See Hudson*, 503 U.S. at 7 (identifying as a relevant consideration the relationship between the need for force and the amount of force used). Leialoha does not describe the strength of the stream from the fire hose, he does not say how far ACO Tabar was standing from him at the time he was sprayed, and he does not say how many times or how long he was sprayed.

Finally, Leialoha has not plausibly alleged any other facts showing that ACO Tabar used the fire hose maliciously and sadistically to cause harm. *See Hoard*, 904 F.3d at 790 (noting that the "'core judicial inquiry'" in an Eighth

18

Amendment excessive force case is "whether the defendant officers acted in bad faith with the intent to harm the inmate" (citations omitted)).  Instead, Leialoha's allegations suggest that ACO Tabar used the fire hose in an attempt to quell the disturbance and restore discipline in Side A.  *See Greer v. Works*, No. Civ.A.4:01-CV-232-Y, 2003 WL 21246081, at *4 (N.D. Tex. Mar. 31, 2003) ("Because the measures taken by Defendants were only done to restore discipline, and not to cause harm, [Plaintiff] has failed to establish a violation of a constitutional right on his excessive force allegation.").  Leialoha's excessive force claim against ACO Tabar is therefore DISMISSED with leave granted to amend.

### b.    ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe

When Leialoha ultimately complied with the prison officials' instruction to leave Side A, he was ordered to lay down.  ECF No. 1 at 15.  Leialoha complied, and his hands were secured behind his back with zip ties.  *Id.*  ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe then dragged Leialoha further into Side B. *Id.*  While doing so, they punched a defenseless Leialoha in his face and body.  *Id.* Some of them also kicked him.  *Id.*  One blow knocked out a tooth of Leialoha's. *Id.*  Leialoha's excessive force claims against ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe may proceed.[6]

---

[6]  To the extent Leialoha alleges that these Defendants also yelled at him and called him names, "verbal harassment generally does not violate the Eighth Amendment."

(continued . . .)

### 4. Denial of Medical Care

Leialoha alleges in Count IV that Sergeant Kaeo denied him medical care after he was moved to Side B.  ECF No. 1 at 16.

"Individuals in state custody have a constitutional right to adequate medical treatment."  *Sandoval*, 985 F.3d at 667 (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  "For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment."  *Id.* (citation omitted).

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'"  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).  "This includes both an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment — and a subjective standard — deliberate indifference."  *Id.* (internal quotation marks and citation omitted).

To meet the objective element, a plaintiff must first demonstrate the existence of a serious medical need.  *See Estelle*, 429 U.S. at 104.  Such a need

---

(. . . continued)
*Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citation omitted); *see also Towles v. Dzurenda*, 735 F. App'x 440, 441 (9th Cir. 2018) (mem.) ("The district court properly dismissed [Plaintiff's] claim based on alleged verbal abuse by prison personnel because 'verbal harassment generally does not violate the Eighth Amendment.'" (quoting *id.*)).

exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (internal quotation marks and citation omitted).  "Examples of serious medical needs include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez*, 203 F.3d at 1131 (internal quotation marks, brackets, and citation omitted).  "Serious medical needs can relate to physical, dental and mental health." *Edmo*, 935 F.3d at 785 (internal quotation marks and citation omitted).

If a prisoner "establishes a sufficiently serious medical need, [he] must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted).  "The indifference to a prisoner's medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support [a denial-of-medical-care] claim." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013) (some internal quotation marks, brackets, and citation omitted).  "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Id.* at 1082.  "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances

and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786 (internal quotation marks, brackets, and citation omitted).

Liberally construed, Leialoha plausibly alleges a serious medical need. According to Leialoha, after spending between one and two hours in a smoke-filled room, he had difficulty breathing, experienced sharp pains in his chest, had blurred vision, and was "bleeding profusely" from his mouth.  ECF No. 1 at 16.  This is enough to state a serious medical need.

Leialoha has not alleged sufficient facts, however, to show that Sergeant Kaeo was deliberately indifferent to his needs.  Instead, Leialoha's allegations describe a situation in which Sergeant Kaeo confronted dozens of prisoners with serious medical needs, including elderly prisoners and those who had lost consciousness.  *Id.*  Although Leialoha may disagree with Sergeant Kaeo's prioritization of those needing medical care, this is not enough to state an Eighth Amendment claim because "[a] difference of opinion between a physician and the prisoner — or between medical professionals — concerning what medical care is appropriate does not amount to deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc).

Leialoha also alleges that he was served dinner and moved to another building on the day of the fire, but he does not allege that he requested medical care at any other time during that day. According to Leialoha, his symptoms persisted for "about 4–5 days after the event." ECF No. 1 at 16. While Leialoha says that he made "numerous request[s]" for medical treatment, *id.*, Leialoha does not say when he spoke to a prison official about his medical needs, what he told them, or how they responded.[7] Leialoha's claim based on the medical care he received is DISMISSED with leave granted to amend.

## IV. <u>MOTION FOR APPOINTMENT OF COUNSEL</u>

Leialoha moves for an appointment of counsel because he cannot afford counsel, he is incarcerated, and the issues in this case are "complex." ECF No. 5 at 1.

"Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citation omitted). Although a federal court "may request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1), it does not have the authority "to make coercive

---

[7] Leialoha briefly alleges that he submitted numerous requests for a grievance. ECF No. 1 at 16. "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities[.]" *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). Leialoha fails to allege a plausible claim based on his access to a grievance form because he does not say who he asked for the form, when he did so, and how that person responded.

appointments of counsel." *Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989).  A court may appoint counsel pursuant to 28 U.S.C. § 1915(e)(1) in cases presenting "exceptional circumstances."  *Palmer*, 560 F.3d at 970.  In determining whether "exceptional circumstances" exist, courts consider "the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citation omitted).  Neither of these considerations is dispositive, so they must be viewed together.  *See id.*

Leialoha has not demonstrated exceptional circumstances.  "[A]t this early stage when the parties have not yet completed discovery and have not proffered any evidence to the Court in support of their claims, the Court cannot determine whether or not Plaintiff is likely to succeed on the merits of his claims." *Rademaker v. Paramo*, No. 3:17-cv-02406-BTM-JLB, 2018 WL 3303172, at *1 (S.D. Cal. July 5, 2018) (citations omitted).  Thus, Leialoha has not shown that he is likely to succeed on the merits.

Moreover, Leialoha has not shown that he is unable to articulate his claims. Indeed, the Court has already concluded that Leialoha stated a plausible Eighth Amendment threat-to-safety claim against Sergeant Sugitan and ACO Lee, and an excessive force claim against ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe.  "These alleged constitutional violations are typical in prison litigation,

straightforward, and not demonstrably complex." *Lucero v. Armale*, No. 3:17-cv-00957-BTM-RBB, 2018 WL 5962673, at *2 (S.D. Cal. Nov. 14, 2018) (citations omitted).

Leialoha's motion for appointment of counsel is therefore DENIED without prejudice. *See Wilkins v. Gonzales*, No. 2:16-cv-0347-KJM-KJN, 2017 WL 3333989, at *2 (E.D. Cal. Aug. 7, 2017) (Order) ("At this early stage in the litigation, it is difficult to gauge plaintiff's likelihood of success on the merits, but he has demonstrated ample ability to articulate his claims and advance his positions; several of his claims have survived statutory screening[.]  Consequently, plaintiff has not demonstrated exceptional circumstances warranting the appointment of counsel.").

## V. <u>CONCLUSION</u>

(1)  Leialoha's claims against the State of Hawaii, the Department of Public Safety, and Defendants in their official capacities, as well as those on behalf of third parties are DISMISSED with prejudice.

(2)  Leialoha's threat-to-safety claim in Count II against Sergeant Sugitan and ACO Lee, and his excessive force claim in Count III against ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe may proceed.

(3)  Leialoha's remaining claims are DISMISSED with leave granted to amend.  Leialoha may file an amended pleading that attempts to cure the noted deficiencies in these claims, if possible, on or before December 17, 2021.

(4)  If he chooses to file an amended pleading, Leialoha must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(5)  IN THE ALTERNATIVE, Leialoha may notify the Court in writing on or before December 17, 2021, that he elects to proceed only with his threat-to-safety claim in Count II against Sergeant Sugitan and ACO Lee, and his excessive force claim in Count III against ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe, and these claims shall be served.

If Leialoha fails to file either an amended pleading or a notice of election, the Court will direct that the Complaint be served as limited by this Order.

(6)  The Clerk is DIRECTED to send Leialoha a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects

26

to file an amended pleading rather than immediately stand on his threat-to-safety claim in Count II against Sergeant Sugitan and ACO Lee, and his excessive force claim in Count III against ACO Wise, ACO Alo, ACO Auau, and Warden Mahoe.

(7)  Leialoha's motion for appointment of counsel is DENIED without prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, November 17, 2021.



Jill A. Otake
United States District Judge

*Leialoha v. State of Hawaii, Department of Public Safety, et al.*, Civil No. 21-00411 JAO-RT; ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND AND DENYING MOTION FOR APPOINTMENT OF COUNSEL